

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20872-CR-GRAHAM/GARBER

UNITED STATES OF AMERICA,
           Plaintiff,

vs.

KENNETH RAY WEST,
a/k/a CRISTIAN NOEL IGLESIAS
           Defendant.
_____:

## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

Kenneth Ray West, a/k/a, Cristian Noel Iglesias, through counsel and pursuant to the United States Sentencing Guidelines § 5K2.13 (diminished mental capacity) moves this Court for a downward departure from the sentencing guidelines range based on the factors listed below.

*Facts regarding Mr. West's Mental Health and Discussion Regarding Diminished Capacity*

At the time of the instant offense Kenneth West was suffering from a significantly reduced mental capacity. This reduced mental capacity was a product of underlying mental illnesses including bipolar disorder.

Mr. West has a long history of mental illness. As early as age nine Kenneth West suffered from emotional problems that probably stemmed from the severe physical and emotional abuse perpetrated by his father. PSI ¶ 50. By age 13, West had been diagnosed with bipolar disorder after

being hospitalized for 2 months following a suicide attempt. PSR ¶ 51. Shortly after this incident, West's mother had him committed to a hospital for treatment of mental illness including schizophrenia. PSR ¶ 51. At age 14, West refused to continue with mental health treatment (which is common for mentally ill persons). PSR ¶ 51. Moreover, during 1991, at age 16 West suffered from chemical dependency and was treated at an inpatient substance abuse facility. PSR ¶ 61. By 1992, while in state custody, West was being treated for bipolar disorder with lithium, but he discontinued taking the medication because of adverse side effects. PSR ¶ 52. In 1996, at age 22 West was diagnosed with Borderline Personality Disorder while federal custody at FMC-Devins. PSR ¶ 56. In 2001, West attempted suicide while in federal custody after suffering both a violent sexual assault and the death of his grandmother within a short time period. PSR ¶ 54. From the year 2000 through 2004, there have been 12 Suicide Risk Assessments conducted on West by the Bureau of Prisons (BOP). PSI ¶ 56.

The effects of Mr. West's long-term reduced mental capacity is reflected in his juvenile criminal record. West committed a series of criminal offenses as a juvenile mostly related to a specified pattern of stealing vehicles. *See*, PSR ¶ 22 (1991, Age 16, Grand Theft Motor Vehicle); PSR ¶ 23 (Age 16, Grand Theft Motor Vehicle); PSR ¶ 24 (Age 16, Grand Theft Motor Vehicle); PSR ¶ 25 (Age 17, Grand Theft Motor Vehicle); PSR ¶ 26 (Age 17, Grand Theft); PSR ¶ 27 (Age 17, Grand Theft); PSR ¶ 28 (Age 18, Grand Theft Motor Vehicle). All of the above indicated offenses appear to reflect a pattern of compulsive behavior occurring after West had been diagnosed with mental illness.

Later, West's criminal conduct escalated to a pattern repeatedly mailing threatening letters. *See* PSR ¶ 29 (In 1993 at age 19 West mailed threatening letters to federal judge and federal

prosecutor in Florida); PSR ¶ 30 (In 1993 at age 20 mailed threatening letters to three different federal judges in Ohio, Oklahoma and California); PSR ¶ 31 (In 1994 West mailed threatening letters to 2 different Assistant U.S. Attorneys and 2 different federal judges and mailed three more letters that were intercepted at the prison.)

Kenneth West's criminal record as described above reflects a self-destructive pattern of behavior that is best explained by diminished mental capacity. In fact, Consulting Psychologist, Jethro Toomer, Ph.D. in his evaluation of West found that the "[t]he predispositional factors in Kenneth West's history were substantial and debilitating and resulted in an individual suffering from a number of interrelated cognitive, emotional and psychological impairment." (Mental Health Evaluation, Hereinafter Defense Exhibit 1, Page 6). Additionally, Dr. Toomer's evaluation concluded that West's mental health problems stemmed from such historical factors as profound support and nurturance deprivation and parental indifference; West also suffered long-term violent childhood abuse due to his sexual orientation. (Exhibit 1, Page 5). Consequently, Dr. Toomer concluded, West developed pervasive dysfunctional behavior pattens including the following:

> Kenneth's [West's] behavior reflects deficits in impulse control, lack of tolerance for anxiety, lack of sublimatory capacity, primary processes and general inadequacy with respect to normal ego functioning. **His overall behavior would include periodic, brief and reversible periods in which bizarre behavior, extreme mood, irrational impulses or delusional thoughts are exhibited, which impact behavior.** (Emphasis Added).

Exhibit 1, Page 5.

West's diminished capacity is the underlying cause for West's actions in the instant case. In that connection, Dr. Toomer further concluded that, "the subject's [West's] recent behavior reflected in the current charges, would not be inconsistent with behavior attributable to the manic

3

phase of a bipolar affective disorder." Moreover, the report finds that, "Kenneth West's adaptive functioning was further compromised by a continued history of sexual assault, instances of head trauma, which would adversely effect impulse control, higher order thought and other cognitive functioning." (Exhibit 1, Page 6). In other words, Kenneth West suffers from mental illnesses that sometimes strongly impairs his impulse and behavior control. This analysis explains not only the instant case of a pattern of mailing threatening communications, but West's history of mailing threatening communications in previous cases.

### MEMORANDUM OF LAW: DIMINISHED CAPACITY

United States Sentencing Guidelines Section 5K2.13 addresses downward departures based on diminished capacity, and states in pertinent part:

> A sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

U.S.S.G. § 5K2.13.

A district court sentencing a defendant "may consider all relevant information, regardless of its admissibility under the rules of evidence." *Onofre-Segarra*, 126 F.3d at 1310, *citing United States v. Lawrence*, 47 F.3d 1559, 1567 (11th Cir. 1995) (provided the information has a sufficient "indicia of reliability."). If this Court finds that the defendant's diminished capacity "contributed to his offense," *United States v. Holden*, 61 F.3d 858, 861 (11th Cir. 1995) (post traumatic stress disorder not shown to have contributed to offense of conviction), a departure may be warranted.

In a case considering the term "mental capacity" under U.S.S.G. § 5K2.13, the court

4

explained the rationale for the departure guideline:

> Section 5K2.13 is intended to create lenity for those whose significantly reduced mental capacity cause them to commit the offense of conviction. In *United States v. Chatman*, 986 F.2d 1446 (D.C. Cir. 1993), the court recognized that the purpose of section 5K2.13 is to "treat with lenity" individuals whose significantly reduced mental capacity contributed to the commission of the crime. *Id.* at 1452. The court reasoned that such lenity is appropriate because "two of the primary rationales for punishing an individual by incarceration - desert and deterrence - lose some of their relevance when applied to those with reduced mental capacity." *Id.*
>
> Likewise, in *United States v. Cantu*, 12 F.3d 1506 (9th Cir. 1993), the court of appeals recognized that "[l]enity is appropriate because the purpose of § 5K2.13 is to treat with some compassion those in whom a reduced mental capacity has contributed to the commission of a crime. *Id.* at 1511.

*United States v. McBroom*, 124 F.3d 533, 547 (3rd Cir. 1997).

It cannot be seriously disputed that Kenneth West committed the offense while suffering from a diminished mental capacity. As previously discussed, West has a verified history of mental illness. Specifically, his mental illness is characterized by his inability to control his behavior and impulses and exhibited by his pattern of mailing threatening letters. Accordingly, West was suffering from mental illness including bipolar disorder when he committed the instant offense. The Court is urged to consider that "the purpose of § 5K2.13 is to treat with some compassion those in whom a reduced mental capacity contributed to the commission of a crime." *Id.* Finally, as discussed in *United States v. Chatman*, 986 F.2d 1446, 1452 (D.C. Cir. 1993), "two of the primary rationales for punishing an individual by incarceration - desert and deterrence - lose some of their relevance when applied to those with reduced mental capacity." Here, when Kenneth West's diminished mental capacity is taken into consideration, it lessens the rationale of applying the same

punishment to him that would be applied to an individual of ordinary mental capacity.

**WHEREFORE,** for the reasons stated above and any others that may appear to the Court during the sentencing hearing, Mr. West respectfully urges that this Court grant his motion for downward departure.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *Daniel L. Ecarius*
Daniel L. Ecarius
Assistant Federal Public Defender
Florida Bar No. 0719765
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
(305) 530-7000, Ext. 114
(305) 536-4559, Fax
Daniel_Ecarius@FD.org, E-Mail

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was served via interagency and US mail the 4th day of May, 2005, to William White, Assistant United States Attorney, 99 NE 4th Street, Miami, FL 33132-2111, Brenda Sue Thornton, United States Department of Justice, Counterterrorism Section, Criminal Division, 10th and Constitution Avenue, NW, Washington, DC 20530, and Renee Moses-Gregory, United States Probation Officer, 300 NE 1st Avenue, Room 315, Miami, FL 33132-2126.

By: *Daniel L. Ecarius*
Daniel L. Ecarius

J:\West, Kenneth R. Reg17248-018\Pleadings\DownwardDeparture.wpd

*UNITED STATES V. KENNETH RAY WEST*
CASE NO. 04-20872-CR-GRAHAM/GARBER

## SERVICE LIST

| | |
|---|---|
| DANIEL L. ECARIUS<br>ASSISTANT FEDERAL PUBLIC DEFENDER<br>150 W. FLAGLER STREET, SUITE 1700<br>MIAMI, FL 33130-1556<br>305/530-7000, EXT. 114<br>305/536-4559, FAX<br>COUNSEL FOR: KENNETH RAY WEST | WILLIAM WHITE<br>ASSISTANT UNITED STATES ATTORNEY<br>99 NE 4TH STREET<br>MIAMI, FL 33132-2111<br>305/961-9451<br>305/530-7087, FAX<br>COUNSEL FOR: GOVERNMENT |
| BRENDA SUE THORNTON<br>UNITED STATES DEPARTMENT OF JUSTICE<br>COUNTER TERRORISM SECTION, CRIMINAL DIVISION<br>10TH AND CONSTITUTION AVENUE, NW<br>WASHINGTON, DC 20530<br>202/353-7951<br>202/514-8714, FAX<br>COUNSEL FOR: GOVERNMENT | RENEE MOSES-GREGORY<br>UNITED STATES PROBATION OFFICER<br>300 NE 1ST AVENUE, ROOM 315<br>MIAMI, FL 33132-2126<br>305/523-5443<br>305/523-5496, FAX |

J:\West, Kenneth R. Reg17248-018\Pleadings\DownwardDeparture.wpd

# Jethro W. Toomer, Ph.D.

### Consulting Psychologist

Diplomate
American Board of
Professional Psychology
Industrial and Organizational Psychology

Diplomate
American Board of
Forensic Examiners

Florida International University
ISB 244A
11200 S.W. Eighth Street (Tamiami Trail)
Miami, Florida 33199
Telephone: (305) 348-3009
(305) 348-0512
Telefax: (305) 252-0086
Mailing Address: P.O. Box 630144
Miami, Florida 33265-0144

Emerald Park Office Center
2419 Building Rd, Suite A-104
Ft Lauderdale, FL 33172
Telephone: (954) 396-0395
Telefax: (954) 962-0928

## PRIVILEGED AND CONFIDENTIAL
## PSYCHOLOGICAL EVALUATION

**Name:** Kenneth Ray West
**Date of Birth:** 6/10/74
**Education:** High School Equivalency Diploma
**Ethnicity:** Caucasian
**Gender:** Male
**Case Number:** 04-20872-CR-Graham
**Attorney:** Daniel Ecarius, Assistant Federal Public Defender
**Evaluation Date:** 2/15/05
**Report Date:** 2/24/05

### Reason for Referral:

Kenneth Ray West was referred for psychological evaluation by Attorney Daniel Ecarius, Assistant Federal Public Defender. The purpose of the evaluation was to assess the defendant's mental status functioning as it relates to the current charges. The defendant is presently charged with threat to use weapons of mass destruction and conveying threats by mail.

### Procedures and Tests Administered:

Bender Visual/Motor Gestalt Designs
Millon Clinical Multiaxial Inventory - III (MCMI-III)
Structured Clinical Interview - DSM IV (SCID)
Records Reviewed:
    Pre-Trial Services Report
    Indictment and Superseding Indictment



DEFENDANT'S EXHIBIT 1

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 2

Current Clinical Functioning:

Kenneth West A.K.A. Cristian Noel Iglesias, is a 30 year old single, Caucasian male who was interviewed in the SHU unit of the Federal Detention Center. He presents as oriented in all spheres and communication is goal directed. Ideas reach their intended goal without loosening of association. Affect is variable and while mood is elevated, it is generally congruent with ideation and situation. Facial expression is intermittently apathetic, vacant and detached. While communication is responsive to requests for information, it is at times, digressive and circumstantial. Intermittently, there is a somewhat primitive and child-like quality to his thought processes and reasoning ability concrete. There is nothing to suggest current hallucinations or delusions and the subject denies any homicidal or suicidal ideation. There is an extensive psychiatric history involving perceptual disturbance and suicidal ideation. The subject acknowledges neurovegetative signs of depression, including sleep and appetite disturbance, irritability and difficulty concentrating. While this depressive symptomatology may be linked to his present circumstances, his history and current clinical presentation suggests that this represents an enduring affective characteristic for him. Throughout the evaluation, his overall mood alternates between being nondescript to reflecting sadness. There is an unreflected anxiety and tension that characterizes his overall demeanor and actions as opposed to a pattern of smoothly swinging emotions running the gamut of the affective continuum. The defendant's overall cognitive psychological and behavioral functioning appears compromised by underlying deficits that are of long standing duration.

The heightened emotionality associated with the defendant's description and recall of victimization and sexual abuse suggests the likelihood of his experiencing the effects of an acute stress disorder.

Background Information:

Kenneth Ray West was born on June 10, 1974, in Brooksville, Florida. His family constellation presently consists of his mother, sister and grandmother. His father is deceased. The defendant is single, never married and has no children. He earned his high school equivalency diploma.

Employment history is erratic, due to his incarceration status. He was employed for a period by Winn Dixie stores in Orlando.

The defendant describes a traumatic and tumultuous developmental history. He describes his father as distant and physically abusive when he learned that his son was homosexual. The subject describes being abuse and ridiculed because of his sexual preference. His father indicated that he was ashamed of him.

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 3

The subject's history of dysfunctional behavior began in his preteen years. At age 12, he was hospitalized following a suicide attempt. He was prescribed mellaril and lithium but was noncompliant with the medication upon discharge. He reports being regularly referred to school guidance counselors for behavioral problems. His developmental history is characterized by multiple hospitalizations in psychiatric facilities, elopement and irregular patron in gay establishments. His substance abuse history includes alcohol.

The subject reports two incidents where he was sexually assaulted while incarcerated. One incident occurred at age 18 and another since his incarceration at the Miami Federal Detention Center.

The defendant reports an additional suicide attempt while in Massachusetts, in 2001. He overdosed on 500 pills. In 1996, he reports being involved in a car accident where he was rendered unconscious. Subsequent to the accident, he experienced grand mal seizures and was prescribed Dilantin, Phenobarbital and Tegretol for a period of approximately five years. This subject also suffers with chronic asthma.

The defendant's diagnostic history includes Bipolar Affective Disorder and was diagnosed prior to age 13 as suffering from Attention Deficit Hyperactivity Disorder and prescribed Ritalin.

The subject reports having been incarcerated at the Federal Detention Center for approximately two years. He was also incarcerated in the same Miami Federal Detention Center for nine months. Prior to that he was an inmate in the State Prison in Charlotte, Florida, for approximately two years.

The defendant acknowledges a history of psychiatric counseling while incarcerated.

The defendant's arrest history of involvement with the criminal justice system dates to November 8, 1990.

Test Results:

No formal intelligence testing was conducted with this subject. Kenneth West demonstrated age appropriate command of basic academic skills.

Responses on the Bender Visual/Motor Gestalt Designs reflect numerous anomalies related to the organization of the figures. Reproductions are characterized by confused order and chaotic arrangement indicative of strong feelings of anxiety, impaired judgement and disorientation. Fragmentation is also noted, indicative of poor abstracting and synthesizing ability.

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 4

Closure difficulty suggests psychological blocking, indecisiveness, compulsive doubting and phobias. Irregular curvature is often associated with irregularity in emotional behavior and difficulty dealing with affective stimuli. Retrogression is prominent, suggesting a lag in maturation or failure in psychological defenses, due to intense anxiety. Many of his reproductions are similar to those produced by individuals of a younger chronological age, where figures are drawn in a more primitive form than that of the original stimulus.

Several factors, including overlapping difficulty, variation in line quality, heavy line quality, poor coordination and rotation of designs are all associated with the likelihood of underlying neurological involvement. Further testing would be required to determine the nature and extent of any neurologically based impairment.

Responses on the SCID reflect a pattern of alcohol abuse. Kenneth acknowledges an alcohol abuse history dating back to his teenage years. He describes an alcohol abuse history characterized by increased tolerance, unsuccessful attempts at abstinence and its interference in carrying out activities of daily living. He acknowledges consuming alcohol until drunk, but denies experiencing adverse physiological reactions associated with unsuccessful attempts at abstinence of memory loss associated with its use. These factors indicate that the subject has a history of alcohol abuse, according to the SCID criteria.

The MCMI-III profile of this defendant suggests that he is fearfully dependent, socially anxious, self-demeaning and dejected. He may strive to assume a passive and self-sacrificing role in many relationships and settings. Despite his tendency and inclination to permit others to exploit him, he is likely to resent those on whom he depends, because they are often abusive and inconsiderate. Anger is typically discharged in an indirect manner. Because his security is threatened by any open expression of resentment. An underlying tension and emotional dysphoria are manifested in disturbing mixtures of anxiety, anger and guilt. Apart from extended periods of dejection and helplessness, he is likely to present as conciliatory by submerging his individuality and submitting at times to abuse and intimidation, he hopes to avoid humiliation and rejection.

Beyond his characteristic level of emotional responsivity, his responses reflect that he has been confronted with an event or events in which he was exposed to a severe threat to his life or a traumatic experience that precipitated intense fear or horror on his part. The residuals of this event appear to be persistently re-experienced with recurring and distressing recollections. Other signs of distress might include sleep disruption, outbursts of anger, panic attacks, hypervigilance, exaggerated startle response or a subjective sense of numbing and detachment

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 5

Summary:

This subject's history and the results of this evaluation suggest that his behavior is influenced by the existence of severe psychological deficits that are of long-standing duration. His history is characterized by profound and early support and nurturance deprivation, leading to numerous developmental delays and pervasive dysfunctional characteristics in behavior that unfold as a product of the interplay of constitutional and experiential influences. Predispositional factors, including impoverished stimulation, parental indifference, abuse and ridicule linked to his acknowledged homosexuality, are reflected in his history. These factors negate the stability and predictability of life necessary for acquiring a consistent pattern of behaving and thinking. The subject's history is characterized by a pervasive pattern of impaired functioning and educational, vocational and interpersonal pursuits. Resultantly, present situations and realities serve as catalysts that stir up long standing memories and feelings, while past learning persists inflexibly, irrespective of how maladaptive or irrational it may be. This sets in motion, a pattern of deficient learning of social attachment behavior and effective functioning. An already deficit-ridden coping mechanism further breaks down under stress, pressure to perform or situations requiring abstract reasoning ability. As a result, the individual under stress real or imagined, manifests unpredictable or maladaptive behavior and may respond with heightened reactivity to the environment in an attempt to address unresolved emotional issues. This deficit functioning is further exacerbated by the use of toxic substances, often for the dissolution of psychic pain.

Kenneth's overall functioning is then based upon his being motivated primarily by his deficiencies. This orientation is fairly typical of individuals who operate out of a "survival" mentality or who have experienced a chaotic background or lack of appropriate acculturation to social norms and/or inconsistent treatment by their environment.

Kenneth's history has been characterized by personality dysfunction, deficit social competence and transient disorders that border on the loss of reality contact as well as cognitive and emotional dyscontrol and suicidal ideation. His deficit social competence is reflected in faulty starts and repeated disruptions which characterize his overall executive functioning. His developmental immaturity is reflected in deficits in the acquisition of a repertoire of mature social skills as well as behavior characterized by deficits in higher order thought processes. Kenneth's behavior reflects deficits in impulse control, lack of tolerance for anxiety, lack of sublimatory capacity, primary processes and a general inadequacy with respect to normal ego functioning. His overall behavior would include periodic, brief and reversible periods in which bizarre behavior, extreme mood, irrational impulses or delusional thoughts are exhibited, which impact behavior.

Kenneth's maladaptive behavior and functioning is consistent with internalized behavior of individuals who have been physically or sexually abused. These include clinical signs of

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 6

depression, withdrawal tendencies, phobias with unspecified precipitance and engaging in substance abuse, suicidal gestures and manifesting overall behavior described as hypervigilant and anxious. The subject's recent behavior reflected in the current charges, would not be inconsistent with behavior attributable to the manic phase of a bipolar affective disorder.

The predispositional factors in Kenneth West's history were substantial and debilitating and resulted in an individual suffering from a number of interrelated cognitive, emotional and psychological impairment. Children with a history of neglect, abandonment, physical and sexual abuse, without intervention, have substantial problems in all areas of life, including interpersonal relationships, decision making, managing conflictive data and engaging in consequential thinking. Kenneth West's adaptive functioning was further compromised by a continued history of sexual assault, instances of head trauma, which would adversely effect impulse control, higher order thought and other cognitive functioning.

As a result of the early onset of the aforementioned predispositional factors, the development of Kenneth's normal ego functioning of secondary thought processes, including integration, realistic planning, adaptation to the environment, maintenance of object relations and defenses against unconscious impulses are weakened and result in behavioral and cognitive responses that are maladaptive, impulsive and warrant consideration in light of the charges.

Name: Kenneth Ray West
Case Number: 04-20872-CR-Graham
Page 7

## DIAGNOSTIC IMPRESSION

| Axis I | | |
|---|---|---|
| | Rule Out/Cognitive Disorder (NOS) | 294.9 |
| | Rule Out/Bipolar II Disorder | 296.89 |
| | Alcohol Abuse by History | 305.00 |
| | Rule Out/Other (or unknown) Substance Abuse | 305.90 |
| | Post Traumatic Stress Disorder | 309.81 |
| | Dysthymic Disorder | 300.4 |
| | Abuse of Child or Neglect of Child | V61.21 |

Axis II   Dependent Personality Disorder with
         Depressive Personality Traits
         Avoidant Personality Traits and Passive-Aggressive
         Personality Features

Axis III  Head Trauma
         Asthma, unspecified                               493.90

Axis IV   Psychosocial and Environmental Problems:
         Interaction with the Legal System
         Incarceration

Axis V    GAF 40 (current)

I, Jethro W. Toomer, Ph.D., certify that I personally conducted and/or prepared this report and all conclusions reflected are those of this expert and not those of any third party; I further certify that the preparation of this evaluation was performed consistent with Chapter 490, Florida Statutes as well as with rules and regulations promulgated pursuant thereto.

Sincerely,

Jethro W. Toomer

Jethro W. Toomer, Ph.D.