UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20872-CR- GRAHAM/GARBER(s)

UNITED STATES OF AMERICA,

v.

KENNETH R. WEST,
 a/k/a Cristian Noel Iglesias,

Defendant.
_____/

## NOTICE OF FILING OF GOVERNMENT EXPERT'S REPORT

The United States of America, through counsel, files this curriculum vitae and  report
of its expert who will be called to testify at the sentencing hearing of the defendant scheduled
for 2:30 p.m., May 31, 2005.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____
WILLIAM WHITE
ASSISTANT UNITED STATES ATTORNEY
99 NE 4th Street
Miami, Florida 33132
Phone:  (305)961-9451
Fax:    (305) 536-4675
Florida Bar No.  087204
William.White@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was mailed and sent by mail and facsimile this 27th day of May, 2005 to: Daniel Ecarius, Assistant Federal Public Defender, 150 W. Flagler Street, Suite 1700, Miami, FL 33130, and to Renee L. Moses-Gregory, U.S. Probation Officer, by interoffice mail and facsimile.

WILLIAM WHITE
ASSISTANT UNITED STATES ATTORNEY

**Doctor David L. Shapiro, L.L.C.**

DAVID L. SHAPIRO, PH.D.
DIPLOMATE IN FORENSIC PSYCHOLOGY
AMERICAN BOARD OF PROFESSIONAL PSYCHOLOGY

SUITE 105
3595 SHERIDAN STREET
HOLLYWOOD, FLORIDA 33021

TELEPHONE: (954) 322-0348                    EMAIL: PSYFOR@AOL.COM                    FAX: (954) 322-0397

May 27, 2005

William White, Esquire
Assistant United States Attorney

Re: Kenneth Ray West

Dear Mr. White:

Pursuant to your referral, I have completed a psychological evaluation of Kenneth Ray West, whom I saw at the Federal Detention Center in Miami, Florida on May 20, 2005 and on May 26, 2005.

In preparation for this evaluation, I reviewed the following documents which you had provided for me:

1.      A complete set of the Bureau of Prisons psychology records from 1994 to the present;
2.      A series of Motions, including the defendant's Motion for A Downward Departure dated May 4, 2005; a Sentencing Memorandum dated May 5, 2005; the Final Judgment of a Change of Name dated September 28, 2004; the Superseding Indictment from the Grand Jury; and the submission of a Plea Agreement dated March 8, 2005;
3.      A file containing reports from Special Agent Thomas Rice of the Federal Bureau of Investigation;
4.      A document entitled "The Government's Notice of Intent to Offer Rule 404-B Evidence";
5.      Copies of the Federal Criminal Procedures, Criminal Code and Rules, that were found in Mr. West's cell;
6.      A psychological evaluation by Doctor Jethro Toomer, dated February 24, 2005; and
7.      The report of the Presentence Investigation dated May 13, 2005.

In addition to interviewing and performing a psychological evaluation of Mr. West, I also interviewed the psychology staff at the Federal Detention Center, who were familiar with Mr. West, including the chief psychologist, Doctor Buigas, and staff psychologist, Doctor Linda Feldman. In addition, I interviewed, by telephone, Mr. West's sister, Michelle West, and his mother, Linda West.

What follows is an integration from these different sources.

Page 2
May 27, 2005

To:  William White, Esquire
Re:  Kenneth Ray West

It should be noted that I have requested but, at the time of the preparation of this report, have not received, the psychiatric records of hospitals where Mr. West says that he was hospitalized as a child, including Charter Hospital in Tampa, Florida, Harbor Shores Hospital in Fort Pierce, Florida and Water Oaks Hospital in Tallahassee, Florida.

Review of the psychology records from the Bureau of Prisons from 1994 to the present time reveals no indications of serious mental illness. At no time was Mr. West ever diagnosed with an Axis I diagnosis, was never seen to be psychotic but, at times, was seen as having mild anxiety and depression, usually situationally related. On several occasions, a diagnosis of Borderline Personality Disorder appears in the records, along with some concerns about Mr. West's suicidal threats. He is described repeatedly as manipulative and that, while he threatens suicide, he has never actually attempted it. This stands in rather stark contrast to the number of times that Mr. West tells staff about actual suicide attempts. As noted above, there are diagnoses of Borderline Personality Disorder with Histrionic, Narcissistic and Antisocial Features, but no indications of a major mental disorder or of serious anxiety or depression. On several occasions, there are comments to the effect that Mr. West's statements of helplessness and poor self-control are goal-directed behaviors in order to get a transfer to a different institution.

The records from the F.B.I. describe rather extensive goal-directed behavior on the part of Mr. West, highly inconsistent with the impulsivity that one might expect from a person with a serious mental disorder. His goal-directed behavior does not have any of the earmarks of delusions, hallucinations, perceptual distortions or any of the features of serious psychopathology.

In short, Mr. West and a co-defendant devised a scheme to defraud the British Government and, when that scheme was discovered, he and his co-defendant decided on the letter-writing threatening anthrax. Mr. West, who was apparently depressed, entered into an agreement with his co-defendant that his co-defendant would testify against him under a Rule 35 and receive a reduction in his prison term. This, of course, shows very careful deliberation, highly inconsistent with the impact of a major mental disorder. In addition, the fact that they specifically labeled the mail as "legal mail", so it would not be opened by institutional staff, again is highly inconsistent with the earmark of any major mental disorder.

Of some note is that, according to the F.B.I. agent, Agent Rice, there were documents found in Mr. West's cell dealing with the Federal Criminal Code, specifically the Section of that Code dealing with terrorism and the various legal proceedings and sentences that could be handed down in a case involving terrorism. Also found in his cell was a directory of Federal judges and a list of addresses of British people and locations. Mr. West, as will be noted, indicated that he had no idea about the seriousness of what he was doing until the F.B.I. came to interview him. The fact that he had such documents in his cell clearly belies this statement.

Page 3
May 27, 2005

To: William White, Esquire
Re: Kenneth Ray West

    Mr. West was provided with an explanation of the limits of confidentiality in this evaluation and was fully able to understand such information, stating, "The government is supposed to get a second opinion, normally this is a confidential evaluation, but that is not so here. You will write a report for the United States Attorney and turn that report over to my attorney." Mr. West therefore was clearly aware of my role and consented to the interview.

    Mr. West stated that he has very serious proceedings going on in Court, worse than he thought. He stated that he needed something to take his mind off of his father and that he thought he could never live without his father. He mentioned that his grandmother had died three months before his father, that his grandfather, who had been a Federal judge, had passed away, and that he really wanted to kill himself. He stated that he looked up to his co-defendant as a father figure, insisting that there was nothing sexual in the relationship. He stated that his co-defendant was older and protected him against the other inmates. He noted that when he was age eighteen and first came into the prison system, he wrote some threatening letters to Federal judges in order to get into the Federal system. He stated that the current plan was that he would commit suicide and his co-defendant would get a Rule 35 (cooperation for testifying against him). He stated that the letter writing got his mind off of his father and he described himself as compulsively writing the letters, feeling better, not thinking about the negativity. He then stated, as noted above, that he did not appreciate the seriousness of it until the F.B.I. came, and, as further noted above, this is inconsistent with his having the Criminal Code materials in his cell. He asserted that he had never even heard about anthrax and never thought this would turn out the way it did. He stated that defrauding the government was the way it started and it led up to bigger things. He stated that his co-defendant knew that he, Mr. West, was in for writing letters and "he used me a little bit". He stated specifically that writing the letters did not give him an excited feeling but rather a feeling of relief. This, again, is an important observation, offered spontaneously by Mr. West, because were he in a manic state, he would definitely be experiencing an excited feeling. He stated that the feeling of relief would last about four hours and would help him to cope. He stated that when the F.B.I. came, "I was numb and I didn't comprehend that it was a terrorist act". He stated that he did not even think about its impact, did not think that he would get charged with anthrax and, in fact, stated that he heard about a woman who threatened her husband with powdered sugar and only got two years.

    He stated that he had a juvenile history, a variety of juvenile behavior problems, and indicating that he was on the medication Ritalin from the time he was four or five until eight years of age. He stated that his father beat him black and blue with a fire hose and that his mother would leave the home because the father would threaten her with a shotgun. He stated that his grandparents were essentially substitute parents. He indicated that his father would call him "a faggot" when his sexual orientation became apparent. He stated that his parents divorced when he was twelve and he became very rebellious at that time, leading to hospitalization at three different facilities. He spoke about the fact that he had stolen his mother's car and then stole another car from a car dealership. He stated that the State put him into a residential treatment facility because his mother could not control him.

Page 4
May 27, 2005

To: William White, Esquire
Re: Kenneth Ray West

When he turned an adult, he stated that he was charged with Grand Theft Auto, stealing from a car dealership and using his father's credit cards. He again described this behavior as compulsive, stating that he lived for doing it, that he would get a high, every day he would get a new car and that he learned what to say to dealers in order to get them to give him the keys to a car. He spoke about a time when he flew to New York and San Francisco on his parents' credit card, at a time that he was struggling with his sexuality. He stated that on one occasion he stole a car from his uncle's dealership and, while in prison, stole checks from the Correctional Corporation of America. He stated that while he was in State prison, a fellow inmate told him that if he wrote threatening letters to Federal officials, that that would get him into the Federal prison system, and he indicated that he did not think about the amount of time that that would give him. He stated that he picked judges names out of directories but "nothing went as planned and I am my own worst enemy".

As noted above, at the age of four, he stated that he was hyperactive, was placed on Ritalin by a psychiatrist, and then saw a guidance counselor at school. He stated that at age ten, he was hospitalized at Charter Hospital in Tampa, Florida for 2½ months. He stated that he was treated with an antipsychotic medication, Mellaril, while in that hospital. He then stated that he saw a psychologist in Tampa for a few months, stopped taking his medication and was then placed in Harbor Shores Hospital in Fort Pierce, where, according to him, he was treated with Mellaril and lithium. Lithium is a medication for Bipolar Disorder. He then stated that he went to a mental health center in Brooksville, Florida, but does not remember how long he was there. He was subsequently hospitalized, according to him, at Water Oaks Hospital in Tallahassee, and then went to a county mental health center in Brooksville once a month for six months. He stated that he saw a psychologist in jail following his car thefts and has been on medication (antidepressant medication) and on suicide watch while in jails. He also indicated that he had a seizure history and has been treated with Tegretol and Dilantin.

He stated that at age sixteen, he stole a car, crashed it, was rendered unconscious and was hospitalized at the Orlando Regional Medical Center for two weeks. He stated that he had seizures every day, was treated with Dilantin and phenobarbital and was on these medications up through his going to state prison. He stated that he had grand mal for seven years and now has petit mal seizures. He states that he regularly gets headaches, occasionally still experiences these petit mal seizures, has frequent dizzy spells, but denies blackouts. He states that he has occasional temporal lobe signs and symptoms and occasional spatial disorientation, but denies any fugue states. He says that he has memory problems, occasional jamais vu experiences and frequent déjà vu experiences.

His sister verified the fact that he did have seizures as a child but was unaware of his having any seizures subsequent to that.

His mother, Linda West, noted that his maternal grandmother had had a nervous breakdown but indicated that that was when she, Ms. West, was in her teen years and she had little memory of it. She did confirm the fact that Mr. West's father was abusive and whipped him with a belt.

Page 5
May 27, 2005

To: William White, Esquire
Re: Kenneth Ray West

Interestingly, his mother's description of her son's seizure history consists of one incident, when he was four years of age, where he was hospitalized for six days. He had apparently had a seizure following a slight fever but the hospital never determined why he had it. According to his mother, he never had another seizure, though he told her that he had had them in prison. She was unaware of his ever having any head injuries and again this is quite inconsistent with Mr. West's version. His mother was unaware of his ever having an automobile accident, being rendered unconscious or being hospitalized at a hospital in Orlando when he was sixteen years of age.

There are also some notable discrepancies from Mr. West's descriptions when his mother describes his hospitalizations. She stated that these hospitalizations were continually for behavioral problems and that she does not recall his being on medication at any of the facilities. This, again, casts doubt on Mr. West's statement that he was medicated both with lithium (a mood-stabilizer) and Mellaril (an antipsychotic medication). Especially since Mr. West would have been a minor at the time, his mother would have been informed of his treatment. Ms. West described the fact that his treatment at the mental health center did not involve medication, either. She described the incident getting him into Harbor Shores as his having tied a jacket around his neck in school and that the school Baker Act'ed him to Harbor Shores Hospital. She stated that he went into Water Oaks in Tallahassee following his being a runaway.

In short, all of these hospitalizations appear to be due to behavioral problems. His mother, despite her involvement in the treatment planning, was unaware of any diagnosis suggestive of a major mental disorder and has no memory of his ever being placed on medication. She did note, once again, inconsistent with Mr. West's story, that, to her knowledge, he has never been on anticonvulsant medication, that the hospital had given her phenobarbital to give to him if he spiked a fever, but that she never had to use it.

In summary, then, a variety of objective sources outside of Mr. West's self-description do not provide evidence of a major mental disorder and do not verify any behaviors suggestive of a major mental disorder, or of the seizure history which Mr. West relates. In addition, the documents discovered in his jail cell, as well as the observations of Special Agent Rice of the Federal Bureau of Investigation, cast doubt on Mr. West's statement that he had no idea of the seriousness of what he was doing.

Psychological Test Results:

I returned to see Mr. West on May 26, 2005 and administered the following psychological tests: Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2); the Validity Indicator Profile (VIP); the Detailed Assessment of Posttraumatic Stress; the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS); the Wechsler Abbreviated Scale of Intelligence; the Rorschach; the Test of Memory Malingering (TOMM) and the Structured Interview of Reported Symptoms (SIRS).

Page 6
May 27, 2005

To:  William White, Esquire
Re:  Kenneth Ray West


The Minnesota Multiphasic Personality Inventory reveals a valid but mildly defensive profile. It is not suggestive of any major mental disorder. Significant elevations on his clinical scales have to do with problems with authority and a sense that he is not coping well with the world around him. There are no elevations on any of the scales that would be indicative of a major mental disorder, including Paranoia, Schizophrenia and Bipolar Disorder.

The Validity Indicator Profile, which is a test to determine lack of motivation on cognitive tasks, reveals invalid findings on both the non-verbal and verbal subtests. His performance is indicative of careless responding, with his simply not putting enough effort into the test to obtain valid findings. Such profiles may result from an individual's deliberate attempt to do poorly but not poorly enough to be classified as an out-and-out malingerer. In other words, it is difficult to tell the exact extent of Mr. West's impairment, if any, due to the fact that he does not put his full effort into these cognitive tests. This is most manifest on the Repeatable Battery for the Assessment of Neuropsychological Status. Here, he obtains an index score of 67, which places him within the first percentile. What this essentially means is that Mr. West is presenting himself as more neuropsychologically impaired than 99% of the population. This is clearly not an accurate finding and most likely reflects the lack of involvement and motivation to take the test, which was noted earlier.

The Wechsler Abbreviated Scale of Intelligence reveals a verbal I.Q. of 80, a performance I.Q. of 75 and a resultant full-scale I.Q. of 76. This is essentially consistent with the testing that was done approximately ten years ago, but once again one needs to consider the extent of effort that he put into the test.

Consistent with the fact that this is not out-and-out malingering are his scores on the Structured Interview of Reported Symptoms, where all of his scores fall within the range of honest responding. It is, therefore, more likely, as noted above, that his poor performance comes from lack of involvement or possibly lack of motivation to complete the testing, rather than any intentional effort to deceive or malinger.

On the Detailed Assessment of Posttraumatic Stress, he obtains, on this self-report instrument, a profile which is consistent with his having been traumatized at some point in the past. He, in fact, speaks about the trauma of having been sexually assaulted at another prison approximately four years ago. However, this, once again, needs to be viewed within the context of the fact that other testing does not reveal such evidence of extreme trauma. Notably, on the Rorschach, a projective test in which the inmate does not know what the "proper" answer would be, he fails to reveal evidence consistent with posttraumatic stress. For instance, the interpretive statements note that Mr. West does not show any evidence of malingering but does show an adaptive capacity to think logically and coherently and to perceive people and events realistically.

Page 7
May 27, 2005

To: William White, Esquire
Re: Kenneth Ray West

In addition, there is no evidence of disordered thinking or impaired reality testing, consequently indicating that there is no basis for inferring that he was unable to recognize the criminality of his behavior.

As noted above, there is no evidence of seriously disordered thinking or impaired reality testing. Nevertheless, he does seem to have below average psychological resources for coping with the demands of everyday living. He demonstrates limited ability to form close relationships with other people and, were he to be seen in therapy, considerable effort would be necessary to form an effective working alliance.

Specifically, with regard to possible evidence of Posttraumatic Stress Disorder, he does not reveal indications of experiencing recurrent troubling recollections or intrusive ideations that involve feelings of helplessness. These findings decrease the likelihood that he has a stress disorder. Nevertheless, it should be kept in mind that he has produced a guarded and constricted protocol in which he is unlikely to have revealed either the extent of his coping capacities or his adaptive capabilities. In addition, his responses do not identify a significant pattern of Depressive Disorder, nor is there any evidence of psychotic impairment.

In summary, then, Mr. West is an individual of low average intelligence, who does not demonstrate the presence of any major mental disorder, either a psychosis or any kind of affective disorder. He endorses items consistent with Posttraumatic Stress Disorder but on a task in which the parameters are less clear, that is, a non-self-report instrument, he does not show such indications of the feelings that would be expected to go along with post-traumatic stress.

Coupled with the historical information noted above, and the many inconsistencies in his self-presentation, it does not appear that, at the time of the offense, he was suffering from any significantly reduced mental capacity which was related to the commission of the offense. The offense in many ways was extensively thought out, carefully planned and does not reveal any evidence of the impulsivity or poor planning that would go along with a major thought disorder or a major affective disorder.

I trust the above analysis is of some assistance to you. Please feel free to call on me if you need further information.

Very truly yours,

*David L. Shapiro Ph. D.*

David L. Shapiro, Ph.D.
Diplomate in Forensic Psychology
American Board of Professional Psychology

DLS:esp

# CURRICULUM VITAE

January, 2005

| | | |
|---|---|---|
| NAME: | David L. Shapiro, Ph.D. | SOCIAL SECURITY #: 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 |
| DATE OF BIRTH: | June 13, 1943 | PLACE OF BIRTH: Boston, Massachusetts |

ADDRESSES:

Suite 105                               and
3595 Sheridan Street
Hollywood, Florida 33021
Telephone: (954) 322-0348
Fax: (954) 322-0397

Center for Psychological Studies
Nova Southeastern University
3301 College Avenue
Fort Lauderdale, Florida 33314-7796
Telephone: (954) 262-5701

WEBSITE: DRDAVIDSHAPIRO.COM

EMAIL: psyfor@aol.com

## PROFESSIONAL LICENSES - Licensed Psychologist:

State of Maryland #783                State of New York #014147        State of Florida #PY6208
District of Columbia #719             State of New Jersey #SI03792

## UNDERGRADUATE EDUCATION:

Harvard College, 1961-1965; B.A., 1965
Field of Concentration: Social Relations

## GRADUATE EDUCATION:

University of Michigan, 1965-1972; M.A., June, 1968; Ph.D., May 6, 1972
Masters Thesis - "Free Association and the Repression-Sensitization Continuum"
Preliminary Exams Passed June, 1969; Topic - "Visual Imagery: Metapsychology and Clinical Implications"
Dissertation Topic - "Structural Aspects of Visual Imagery in Altered States of Consciousness: A Study of Regressive Styles"

## PROFESSIONAL ORGANIZATIONS:

1. Fellow, American Psychological Association (Division 41) (Division 42)
2. Chair, Ethics Committee - Maryland Psychological Association (1989 to 1991, 1997 to present)
3. Chair, Board of Ethical Affairs, Maryland Psychological Association (1992 to 1993, 1996 to 1997)
4. Licensed Psychologist, District of Columbia (1975)
5. Licensed Psychologist, State of Maryland (1974)
6. Diplomate in Forensic Psychology, American Board of Professional Psychology (April, 1979 to present)
7. Chair, Ethics Committee, American Board of Professional Psychology (1990 to 1994); Member (1995 to present)
8. Board of Directors, American Board of Forensic Psychology (1988 to 1997)
9. Member-At-Large, American Psychological Association, Division 41 (Psychology and Law) (1991 to 1993)
10. Member, Ethics Committee, American Psychological Association (1994 to 1996)
11. Member, Board of Trustees, American Board of Professional Psychology (1994 to 1997)
12. Committee on Legal Issues (C.O.L.I.), American Psychological Association (October, 1996 to 1998)

## HONORS AND AWARDS:

1. Distinguished Contribution to Forensic Psychology, presented at A.P.A. Annual Meeting, August, 1986.
2. President, American Academy of Forensic Psychology, 1986 to 1988.
3. Distinguished Practitioner in Psychology, National Academies of Practice, selected March, 2000.
4. Distinguished Contribution to Psychology, presented by California Psychological Association, March, 2001.

## REFERENCES: Available upon request

David L. Shapiro, Ph.D.                                                                                                    Page 2

## CURRICULUM VITAE (Continued)

WORK EXPERIENCE:

1.   Associate Psychology Director, Coordinator of Psychology Training Program, Center for Forensic Psychiatry, Ann Arbor, Michigan, July 1, 1969 to April 19, 1974.
     Duties: Diagnostic testing and interviewing, individual and group psychotherapy, supervision of diagnostic testing, testimony in courts of law as expert witness.

2.   Psychological Consultant, Oakland County Juvenile Court, 1970-1971.

3.   Psychological Consultant, Federal Correctional Institution, Milan, Michigan, September, 1971 to March, 1973
     Duties: Psychotherapy, supervision of individual and group psychotherapy, consultation to prison staff.

4    Psychological Consultant, Division of Vocational Rehabilitation, Ann Arbor, Michigan, November, 1972 to April, 1974.

5.   Private Practice of Psychotherapy, Ann Arbor, Michigan, October, 1972 to April, 1974.

6    Staff Psychologist, Clinical Administrator, Forensic Programs Division, Saint Elizabeth's Hospital, Washington, D.C., May, 1974 to January, 1979.

7    Private Practice of Psychotherapy and Forensic Psychology, Washington D.C., November, 1974 to present.

8.   Chief, Pretrial Branch, Forensic Programs Division, Saint Elizabeth's Hospital, Washington, D.C., January 1979 to August, 1980.

9.   Psychology Consultant, Clifton T. Perkins Hospital Center, Jessup, Maryland, September, 1980 to March, 1981

10.  Private Practice of Psychotherapy, Baltimore, Maryland and Washington, D.C., September, 1980 to present Diagnostic testing and forensic evaluations.

11.  Chief, Mental Health Services, State of Maryland, Division of Corrections, July, 1996 to March, 1997

12.  Chief Psychologist, Maryland Penitentiary, March, 1997 to August, 1998.

13.  Associate Professor of Psychology, John Jay College of Criminal Justice, New York, New York, August, 1998 to 2001.

14   Associate Professor of Psychology, Center for Psychological Studies, Nova Southeastern University, Fort Lauderdale, Florida, 2001 to present.

TEACHING EXPERIENCE:

1.   Teaching Fellow, "Introductory Psychology", University of Michigan, 1966-1967.

2.   Teaching Fellow, "Dynamics of Mental Illness" (Psychology 566), University of Michigan, 1966-1967, 1968-1969, 1969-1970.

3.   Lecturer, Department of Psychology, Eastern Michigan University.

4.   Guest Lecturer, Forensic Sciences Program, George Washington University.

5.   Faculty, Postdoctoral Institutes, "Psychology in the Courtroom", Division of Clinical Psychology, American Psychological Association, 1978, 1979, 1980, 1981, 1982, 1985.

6    Psychological Consultant, United States Secret Service, training agents to identify and make appropriate interventions in situations involving mentally ill individuals, August, 1981 to March, 1983.

David L. Shapiro, Ph.D.                                                                                     Page 3

CURRICULUM VITAE (Continued)

7.    Forensic Psychology Consultant, Taylor Manor Hospital, Ellicott City, Maryland, 1980 to present.

8     Professorial Lecturer, School of Justice, College of Public and International Affairs, The American University, Washington, D.C., 1985-1986, 1986-1987, 1987-1988, 1988-1989.

9.    Associate Clinical Professor of Psychiatry and Behavioral Sciences, George Washington University School of Medicine and Health Sciences, Washington, D.C., 1985 to present.

10.   Lecturer, Psychology Department, University of Maryland, Baltimore County, 1990, 1993, 1995, 1998.

11.   Faculty Associate, School of Continuing Studies, Johns Hopkins University, 1993 to present.

12.   Adjunct Faculty, Union Institute, Cincinnati, Ohio. May, 1996 to present.

13.   Adjunct Faculty, Allegheny University, Philadelphia, Pennsylvania, 1998.

14.   Adjunct Faculty, University of Baltimore, 1998.

JOURNALS:

1.    Editorial Board, *Journal of Child Custody.*
2.    Editorial Board, *Journal of Family Violence.*

PUBLICATIONS:

1.    Shapiro D: The significance of the visual image in psychotherapy. Psychotherapy: Theory Research and Practice, 7(4):209-212, 1970.

2.    Shapiro D: Altered states of consciousness and crimes of violence. Journal of Forensic Psychology. December,1971.

3.    Shapiro D, Rosenwald GC: Free association and repression - sensitization. Journal of Personality Assessment. February, 1975.

4.    Shapiro D: The Criminal Personality - A Book Review. Newsletter of Division of Psychologists in Public Service (Division 18-APA).

5.    Shapiro D: "Faking bad" in the criminal justice system. Journal of Forensic Psychology, 7(1), 1979

6.    Shapiro D: Law, Psychology and the Courts - A Book Review. Journal of Marital and Family Therapy, 6(3):363-365, 1980.

7.    Shapiro D, Ratner R: Episodic dyscontrol and criminal responsibility. Bulletin of the American Academy of Psychiatry and the Law, November, 1980.

8.    Shapiro D: Role of the psychologist in the prediction of dangerousness. Bulletin of the American Academy of Forensic Psychology, 2(1), 1981.

9.    Shapiro D: Criteria for the retention of the insanity defense. Bulletin of the American Academy of Forensic Psychology, 3(1), August, 1982.

David L. Shapiro, Ph.D.                                                                                           Page 4

## CURRICULUM VITAE (Continued)

10.   Shapiro D: <u>Psychological Evaluation and Expert Testimony: A Practical Guide to Forensic Work</u>. Van Nostrand Reinhold, 1983.

11.   Shapiro D: Psychotherapy with violent patients: Professional and legal responsibilities of the therapist. American Journal of Forensic Psychology, 1(3), 1983.

12.   Shapiro D: Estelle v. Smith: Legal constraints on psychological examinations. American Journal of Forensic Psychology, 2(2), 1984

13.   Shapiro D: The insanity defense and diminished capacity. In Ewing C (ed): <u>Psychology, Psychiatry and the Law</u> Professional Resource Exchange, Inc., 1985.

14.   Shapiro D: Criminal Responsibility: An integrative model for assessment. In Everstine L (ed): <u>Psychotherapy and the Law</u>. Grune and Stratton, 1986.

15    Shapiro D: "Malpractice". Psychotherapy in Private Practice, 4(1), 1986.

16.   Shapiro D: The Insanity Defense Reform Act: Implications for clinical practice. Bulletin of the American Academy of Forensic Psychology, 7(1), July, 1986.

17.   Shapiro D: A clinician's guide to reducing the risk of malpractice. Psychotherapy in Private Practice, 5(1), 1987.

18.   Shapiro D: Evaluating Competencies - A Book Review. Contemporary Psychology, April, 1987.

19.   Shapiro D: The duty to warn: A case study. Psychotherapy in Private Practice, 5(4), 1987.

20.   Shapiro D: Good news and bad news: The case of White vs. U.S. Bulletin of the American Academy of Forensic Psychology, 8(1), July, 1987.

21.   Shapiro D: Ethical constraints in forensic practice. Psychotherapy in Private Practice, 6(1), 1988

22.   Shapiro D: Limitations of expert testimony. Forensic Reports, 1(2):155-164, 1988.

23    Shapiro D: The ultimate issue smokescreen. California Psychologist, XXII(5), October, 1988.

24.   Shapiro D: Book Review - <u>Forensic Psychiatry - A Practical Guide for Lawyers and Psychiatrists</u>. Contemporary Psychology, 1989.

25.   Shapiro D: <u>Forensic Psychological Assessment: An Integrative Approach</u>. Allyn & Bacon, June, 1990.

26    Shapiro D: Book Review - <u>Fifty Ways to Avoid Malpractice</u>. Psychotherapy in Private Practice, 1991

27    Shapiro D: Problems of the therapist treating violent patients. In Field, Hertzberg and Ostrom (eds): <u>Violence Prevention and Treatment</u>. Spectrum Books, 1990.

David L. Shapiro, Ph.D.                                                                                           Page 5

## CURRICULUM VITAE (Continued)

28.  Knapp, Vandecreek, Shapiro: Statutory remedies to the Duty to Protect: A reconsideration. Psychotherapy 27(2):291-296, 1990.

29.  Shapiro D: Ethical constraints in forensic settings. Maryland Psychological Association Newsletter, 35(5):11-12, 1990.

30.  Shapiro D: Problems encountered in the preparation and presentation of expert testimony. In Margenau (ed): The Encyclopedic Handbook of Private Practice. Gardner Press, Inc., New York, 1990, pp. 739-758.

31.  Shapiro D: Informed consent in psychotherapy. Maryland Psychological Association Newsletter, 36(4):13-14 1991.

32.  Shapiro D: Another view of the psychology-law interface. Maryland Psychological Association Newsletter 36(4):16-17, 1991.

33.  Shapiro D: Informed consent in forensic evaluations. Psychotherapy in Private Practice, 9(1):145-154, 1991

34.  Shapiro D: Ethical problems in the suppression of data. Forensic Reports.

35.  Shapiro D, Barnett J, Dvoskin A: Dual Relationships in Forensic Practice - The Maryland Psychologist, 37(5):9-11, 1992.

36.  Shapiro D: Book Review - Confronting Malpractice. Psychotherapy in Private Practice, 10(1), 1992.

37.  Shapiro D: Detection of malingering and deception. In Innovations in Clinical Practice: A Source Book. Vol. 12 Professional Resource Press, Sarasota, Florida, 1993.

38.  Shapiro D, Murtagh B: The Insanity Defense Reform Act in clinical practice - Has anything really changed? Bulletin of the American Academy of Forensic Psychology, 16(1), August, 1995.

39.  Shapiro D: Ethical Implications of Recent Supreme Court Decisions, California Western Law Review, 34(1) 1998.

40.  Shapiro D: Criminal Responsibility, A Manual for Practice. Professional Resource Press, Sarasota. Florida March, 1999.

41.  Shapiro, DL: Informed Consent to Psychotherapy. In Innovations in Clinical Practice: A Source Book. Vol. 19 Professional Resource Press, Sarasota, Florida, 2001, pages 275-278.

42.  Shapiro D: Ethical Issues in Forensic Practice. In Van Dorsten (ed): Forensic Psychology: From Classroom to Courtroom, Kluwer/Plenum, 2002, pages        .

43.  Goldstein A, Morse S, Shapiro D: Criminal Responsibility Evaluations, in Forensic Psychology, Handbook of Psychology, Vol. XI, New York, Wiley, pages 381-406.

44.  Shapiro D: Forensic Evaluation Outline in Koocher (ed): Psychologist's Desk Reference, Oxford, pages

David L. Shapiro, Ph.D.                                                                                                                        Page 7

CURRICULUM VITAE (Continued)

12. "Nuts and Bolts of Expert Testimony". Seminar presented at Mid-Winter Meeting of Psychologists in Independent Practice (APA Division 42), The Greenbrier, White Sulphur Springs, West Virginia, February, 1983.

13. "Legal Constraints on Criminal Responsibility Evaluation". Paper presented at the Annual Meeting of the American Psychological Association, Anaheim, California, 1983.

14. "Forensic Psychology: Expert Testimony in Child Custody; Personal Injury Litigation; Civil Commitment Proceedings; Professional Liability and Malpractice". Seminars presented at Veterans Administration Medical Center, North Chicago, Illinois, June 23-24, 1983.

15. "Malpractice Mini-Seminar". Presented to the Association of Practicing Psychologists, Montgomery-Prince George's Counties, Inc., 1983.

16. "The Psychologist as Expert Witness". Seminar presented at Convalescent Hospital for Children, Rochester, New York, March, 1984.

17. "The Use and Abuse of Expert Testimony". Continuing Education Workshop presented at 15th Annual Mid-Winter Convention, APA Divisions 29 and 42, San Diego, California, February 29, 1984.

18. "Forensic Psychology: An Overview". Seminar presented at Veterans Administration Medical Center, Honolulu, Hawaii, May 6-7, 1984.

19. "Mock Trial: The Insanity Defense". Seminar presented at the Annual Meeting of the Maryland Psychological Association, College Park, Maryland, June, 1984.

20. "Disclosure of Psychological Examinations: A Dilemma for the Expert Witness". Paper presented at the Annual Meeting of the American Psychological Association, Toronto, Canada, August, 1984.

21. "Mock Trial: Criminal Responsibility and Personal Injury". Seminar presented at the Veterans Administration Medical Center, North Chicago, Illinois, August, 1984.

22. "Legal Issues in Human Service Delivery". Seminar presented at Madison Center, South Bend, Indiana, October 1984.

23. "Criminal Responsibility". Workshop presented at seminar entitled New Directions in Forensic Psychology, sponsored by the American Academy of Forensic Psychology, Silver Spring, Maryland, January 18-20, 1985.

24. "Child Custody and the Mental Health Professional". Seminar presented at Convalescent Hospital for Children, Rochester, New York, January 25, 1985.

25. "Use and Abuse of Expert Testimony". Seminar presented at Continuing Education Workshop entitled Mental Health/Law Update, sponsored by Psychological Seminars, Inc., Sheraton Sand Key, Clearwater Beach, Florida, February 13-14, 1985 and AMFAC Hotel, Dallas-Fort Worth Airport, November 17, 1985.

David L. Shapiro, Ph.D.                                                                                     Page 5

## CURRICULUM VITAE (Continued)

26.   "Ethics, Confidentiality and Legal Liability: Dilemmas for the Psychologist in an Age of Litigation". Continuing Education Workshop presented at the 16th Annual Mid-Winter Convention, APA Divisions 29 and 42. Miami Beach, Florida, February 28, 1985. Sponsored by APA Division of Continuing Education, August 26, 1986, September 1, 1987, August 12, 1988, August 14, 1989, August 10, 1990, August 9, 1991, August 17, 1992 and August 13, 1993. Presented at Annual Meeting of the Virginia Psychological Association, Williamsburg, Virginia, April 6, 1986.

27    "Professional Liability and Malpractice". Continuing Education Workshop presented at the Annual Meeting of the Maryland Psychological Association, Baltimore, Maryland, June 7, 1985.

28.   "The Relevance of Psychological Testing in Forensic Settings". Paper presented at the Annual Meeting of the American Psychological Association, Los Angeles, California, August 23, 1985.

29.   "Professional Liability and Malpractice". Seminar presented at Convalescent Hospital for Children, Rochester, New York, October 4, 1985.

30.   "Use and Abuse of Expert Testimony". Presented at Pre-Conference Institute, North Carolina Psychological Association's Fall Conference, Winston-Salem, North Carolina, October 11, 1985.

31.   "Character Disorders, Impulse Disorders and the Law". Seminar presented at the Veterans Administration Medical Center, North Chicago, Illinois, January 31, 1986.

32.   "Roles for the Expert Witness, Civil and Criminal". Seminar presented at Continuing Education Workshop. Second Annual Mental Health and Law Conference, Sheraton Sand Key, Clearwater Beach, Florida March 13, 1986; Marina del Rey, California, November 15-16, 1986 and Dallas, Texas, January 23-24, 1987

33.   "Criminal Responsibility". Presented at Pre-Convention Workshop, American Academy of Forensic Psychology, Washington, D.C., August 20, 1986.

34.   "Ethical Constraints in Forensic Settings". Paper presented at the Annual Meeting of the American Psychological Association, Washington, D.C., August 24, 1986.

35.   "Ethical Issues in the Independent Practice of Neuropsychology". Workshop presented at the Annual Meeting of the National Academy of Neuropsychology, Las Vegas, Nevada, October 28, 1986.

36    "Ethical Conflicts and Malpractice Litigation". Seminar presented at the Veterans Administration Medical Center North Chicago, Illinois, October 30, 1986.

37    "The Use and Abuse of Expert Testimony". Presented at Taylor Manor Hospital, Ellicott City, Maryland, November 31, 1986.

38    "Advanced Workshop in Forensic Practice". Presented to the Division of Forensic Services, Massachusetts Department of Mental Health, March 27, 1987.

David L. Shapiro, Ph.D.                                                                                  Page 9

## CURRICULUM VITAE (Continued)

39. "Professional Liability and Malpractice". Workshop sponsored by the American Academy of Forensic Psychology, Cincinnati, Ohio, April 4, 1987. Also presented to Central New York Psychological Association. Syracuse, New York, November 20, 1987.

40. "Expert Testimony: Problematic Areas". Presented to John Jay College of Criminal Justice, New York City, April 30, 1987.

41. "The School Psychologist In and Out of the Courtroom". Seminar presented to Joint Meeting of the Maryland and Virginia School Psychologists Association, Alexandria, Virginia, May 9, 1987.

42. "Expert Testimony and Dangerousness". Seminar presented to Veterans Administration Medical Center Cleveland, Ohio, June 4, 1987.

43. "Amnesia" and "Malingering". Seminars presented to Association of State Forensic Directors, Columbus. Ohio, June 5, 1987.

44. "Criminal Forensic Psychology". Three-day workshop presented at the ABPP Training Institute, Portland, Oregon, July 30-August 1, 1987; July 18-21, 1988; July 24-27, 1989; July 23-25, 1990.

45. "Forensic Neuropsychology". Workshop sponsored by the American Academy of Forensic Psychology, New York City, August 25, 1987.

46. "The Duty to Warn: Clinical Perspectives and Legal Critique". Symposium presented at the Annual Meeting of the American Psychological Association. New York City, August 28, 1987

47. "Current Critical Issues in Mental Health Law". Presented at the Veterans Administration Medical Center, North Chicago, Illinois, October 26-27, 1987. Also presented at Taylor Manor Hospital, Ellicott City, Maryland. November 6, 1987.

48. "Neuropsychology in the Courtroom: A Cautionary Note". Presented at the Annual Meeting of the National Academy of Neuropsychology, Chicago. Illinois, October 29, 1987.

49. "Mental Health Law: An Update". Seminar presented at the Annual Meeting of the American Psychological Association Division 42, Scottsdale, Arizona, February, 1988.

50. "Standard of Care in the Prediction of Violent Behavior". Paper presented at Biennial Meeting of American Psychological Association Division 41, Miami Beach, Florida, March, 1988.

51. "Advanced Forensic Practice". Seminar presented to John Jay College of Criminal Justice, New York City April 10, 1988.

52. "Forensic Psychology - An Overview". Seminar presented to Psychology Staff, New York City Police Department, New York City, April 11, 1988.

David L. Shapiro, Ph.D.                                                                                                  Page 18

## CURRICULUM VITAE (Continued)

53.   "The Scope of Forensic Practice". Seminar presented to Psychology Interns, Silas Hays Army Hospital. Fort Ord. California, May 17-18, 1988, May 18-19, 1989, May 7-8, 1990, May 20-21, 1991, June 11-12. 1992 and May 20-21, 1993.

54   "Expert Testimony". Seminar presented to Idaho Psychological Association, Boise, Idaho. June 8, 1988

55.   "Informed Consent in Forensic Evaluations". Paper presented at the Annual Meeting of the American Psychological Association, Atlanta, Georgia, August 14, 1988.

56.   "Use and Abuse of Expert Testimony". Seminar presented at the Annual Meeting of the British Columbia Psychological Association, Vancouver, British Columbia, Canada, October 19, 1988.

57   "Legal Constraints on Neuropsychological Evaluations". Workshop presented at National Academy of Neuropsychology, Orlando, Florida, November 4, 1988.

58.   "Current Litigation Affecting Expert Testimony". Seminar presented at the Continuing Education Seminar. Niagara University, Buffalo, New York, November 30, 1988.

59.   "Professional Liability and Malpractice". Paper presented at Taylor Manor Hospital, Ellicott City, Maryland. January 27, 1989.

60.   "Expert Testimony", "Professional Liability" and "Use of Psychological Testing in the Courtroom". Presented at Fifth Annual Mental Health/Law Update, sponsored by Psychological Seminars, Inc., Sheraton Sand Key. Clearwater Beach, Florida, March 16-18, 1989.

61.   "Ethics and Malpractice". Presented to Veterans Administration Medical Center. Fort Howard, Maryland. April 14, 1989.

62.   "Neuropsychological Assessment in Civil Competency". Presented to New Jersey Psychological Association, April 29, 1989.

63.   "Current Legislation Regarding 'Duty to Warn". Presented at Annual Convention of the Maryland Psychological Association, June 16, 1989.

64.   "Statutory Developments in the Duty to Protect". Presented at Annual Convention of the American Psychological Association, August 13, 1989.

65.   "Ethical and Legal Concepts in the Presentation and Suppression of Data". Presented at Annual Convention of the American Psychological Association, August 13, 1989.

66.   "Tort Liability in Expert Testimony". Presented at Annual Meeting of the American Academy of Psychiatry and Law, Washington, D.C., October 22, 1989.

67.   "Malpractice Concerns for Neuropsychologist". Seminar presented at Annual Meeting of the National Academy of Neuropsychology, November 2, 1989.

David L. Shapiro, Ph.D.                                                                           Page 11

CURRICULUM VITAE (Continued)

68.    "Continuing Education in Forensic Psychology". Presented at Biennial Meeting of APA Division 41, Williamsburg
       Virginia, March 16, 1990.

69.    "A Clinician's Guide to Preventing Malpractice". Seminar sponsored by American Academy of Forensic
       Psychology, New York, New York, April 6, 1990.

70.    "A Survival Guide for the Expert Witness". Seminar presented at Annual Convention of Maryland Psychological
       Association, Columbia, Maryland, June 15, 1990.

71.    "Standards of Practice in Forensic Evaluations". Presented at Annual Meeting of the American Psychological
       Association, Boston, Massachusetts, August 13, 1990.

72.    "Forensic Assessment Techniques". Workshop presented at the American Academy of Forensic Psychology
       Annual Meeting, Atlanta, Georgia, February 7, 1991.

73     "Use and Abuse of Expert Testimony". Seminar presented at Seventh Annual Mental Health and Law
       Conference, Psychological Seminars, Inc., Clearwater Beach, Florida, March 23, 1991.

74.    "Ethical Problems in the Assessment of Malingering". Workshop presented at First Annual Conference on
       Malingering, Fort Lauderdale, Florida, April 26, 1991.

75.    "Standards of Forensic Practice in Criminal Settings". Paper presented at Annual Meeting of the American
       Psychological Association, San Francisco, California, August 16, 1991.

76.    "Ethical Issues in Private Practice". Presented at Maryland Psychological Associate Private Practice Conference,
       Columbia, Maryland, January 31, 1992.

77     "Use and Abuse of Expert Testimony". Workshop sponsored by The American Academy of Forensic
       Psychology, Charlotte, North Carolina, February 6, 1992.

78.    "Forensic Assessment Techniques". Workshop sponsored by The American Academy of Forensic Psychology,
       Boston, Massachusetts, April 3, 1992.

79.    "Ethics in Professional Practice". Workshop sponsored by Maryland Psychological Association, Ocean City
       Maryland, May 1-3, 1992 and April 30 to May 1, 1993.

80.    "Professional Liability and Malpractice". Seminar sponsored by Arkansas Institute of Behavioral Health
       Resources, Inc., Little Rock, Arkansas, May 15-16, 1992.

81.    "Forensic Assessment". Seminar presented at Eisenhower Army Medical Center, Augusta, Georgia, July 23-
       24, 1992, April 15-16, 1993, January 10-11, 1994 and September 20-22, 1994.

82.    "The Interface of Psychology and Law". Workshop jointly sponsored by Maine Bar Association and Maine
       Psychological Association, Portland, Maine, September 17-18, 1992.

David L. Shapiro, Ph.D.                                                                                          Page 19

CURRICULUM VITAE (Continued)

83.   Assessment of Violent Patients - Clinical and Legal Aspects". Presented at Veterans Administration Hospital, Cleveland, Ohio, January 20, 1993.

84.   "Preparation for the ABPP Examination in Forensic Psychology". Workshop sponsored by American Academy of Forensic Psychology, Chicago, Illinois. January 23, 1993; Philadelphia, Pennsylvania, April 29, 1995, Chicago, Illinois, November 12, 1995; Milwaukee, Wisconsin, March 22, 1998.

85.   "Ethics and Legal Liability". Seminar presented to Allegany College, Cumberland, Maryland, February 5, 1993

86.   "Liability and Malpractice". Seminar sponsored by American Academy of Forensic Psychology. Denver, Colorado, March 11, 1993.

87.   "Forensic Psychology Post Doctoral Institute". A fifty hour post-doctoral training seminar covering all aspects of Forensic Psychology, sponsored by Maryland Psychological Association, December, 1992 to July, 1993.

88.   "The Need for MMPI Forensic Critical Items". Paper presented at Annual Meeting of the American Psychological Association, Toronto, Ontario, Canada, August 23, 1993.

89.   "Ethics in an Age of Litigation". Seminar presented to Georgia Psychological Association, Asheville, North Carolina, January 15-16, 1994.

90.   "Does the APA Code Provide Adequate Guidance in Forensic Assessment?" Paper presented at Annual Meeting of the American Psychological Association, Los Angeles, California, August 11, 1994.

91.   "Ethical Constraints in Forensic Practice". Continuing education workshop sponsored by American Psychological Association, at American Psychological Association Annual Meeting, Los Angeles, California, August 13, 1994

92.   "Update in Mental Health Law". Seminar presented at Veterans Administration Medical Center, North Chicago, Illinois, November 17-18, 1994.

93.   "Standards of Care in Forensic Assessment". Paper presented at American Psychological Association Annual Meeting, New York, New York, August 13, 1995.

94.   "Mental Health Law Update". Workshop sponsored by the American Academy of Forensic Psychology, Boston, Massachusetts, March 29, 1996. Also presented at the Annual Convention of the Maryland Psychological Association, Baltimore, Maryland, June 14, 1996, and at the Annual Convention of the American Psychological Association, Toronto, Ontario, Canada, August 12, 1996.

95.   "Violence Prediction and Risk Assessment". Presented at Workshop on Aggression and Abuse, Clinical and Legal Issues, Fort Lauderdale, Florida, April 12, 1996.

96.   "Duty to Warn and Protect: Tarasoff and Beyond". Presented at Workshop on Aggression and Abuse, Clinical and Legal Issues, Fort Lauderdale, Florida, April 12, 1996.

David L. Shapiro, Ph.D.                                                                                          Page 13

## CURRICULUM VITAE (Continued)

97.   "Criminal Forensic Psychology; Ethical Constraints in Forensic Settings; Preparation for the Diplomate Examination in Forensic Psychology". Workshops presented at the American Board of Professional Psychology Summer Institute, Portland, Oregon, June 17-22, 1996; June 16-21, 1997.

98.   "Ethical Pitfalls in Waivers of Privilege". Paper presented at the Annual Meeting of American Psychological Association, Toronto, Ontario, Canada, August 10, 1996.

99.   "Assessment of Malingering", Grand Rounds, Spring Grove Hospital Center, October 31, 1996.

100.   "Ethics and Professional Practice". Five Day Workshop Presented to Union Institute, May, 1996 and September, 1997.

101.   "The DSM-IV in Clinical Practice". Five Day Workshop Presented to Union Institute, December, 1997.

102.   "Risk Management". Workshop Presented to Maryland Psychological Association, October, 1997.

103.   "Ethics, Confidentiality and Legal Liability". Presented to Post-Doctoral Institute, A.P.A., Chicago, Illinois, August, 1997.

104.   "Ethical Issues in Forensic Settings". Seminar presented for American Academy of Forensic Psychology, San Diego, California, February 20, 1998.

105.   "Constraints on Expert Testimony". Paper presented at the Annual Meeting of American Psychological Association, August, 1998.

106   Postdoctoral Institute, Maryland Division of Corrections. 36 hour seminar, May, 1998 to May, 1999.

107   "The Law of Psychology and the Psychology of Law". Seminar presented with Michael Perlin, J.D., American Academy of Forensic Psychology, Toronto, Ontario, Canada, March 25, 1999.

108.   "Psychology and the Law". Four day seminar presented at Wilford Hall Air Force Medical Center, San Antonio Texas, April 6-9, 1999.

109.   "Psychological Assessment". Four-day seminar presented for Union Institute, Washington, D.C., April 15-18, 1999.

110.   "Forensic Psychology: What It Is and What It Is Not". Keynote Address, Hudson Valley Conference on Undergraduate Psychology, May 7, 1999.

111.   "Forensic Assessment: Scientific, Technical or Other Specialized Knowledge". Paper presented at the Annual Meeting of American Psychological Association, Boston, Massachusetts, August 19, 1999.

112.   "Informed Consent in Forensic Evaluations". Paper presented at the Annual Meeting of American Psychological Association, Boston, Massachusetts, August 24, 1999.

David L. Shapiro, Ph.D.                                                                                          Page 15

## CURRICULUM VITAE (Continued)

128. "Sex Offenders: Trauma Victims and Perpetrators". Chair of Symposium, presented at International Society for the Study of Trauma and Stress, New Orleans, Louisiana, December 8, 2001.

129. "The Death Penalty, An Essential Investigation", Chair and Discussant for Symposium, presented at Annual Meeting of American Psychological Association, Chicago, Illinois, August, 2002.

130. "Mental Health Disability and the Law", presented with Perlin, M., Continuing Education Seminar, Center for Psychological Studies, Nova Southeastern University, Jacksonville, Florida (December 6-7, 2002). Fort Lauderdale, Florida (January 24-25, 2003).

131. "Current Controversies in Forensic Psychology", Continuing Education Seminar, American Academy of Forensic Psychology, Kansas City, Missouri, October 26, 2002.

132. "Ethical Issues – Current Controversies", Continuing Education Seminar, Florida Psychological Association, September, 2002.

133. "The Impact of Recent Supreme Court Decisions on the Practice of Psychology, Continuing Education Seminar Center for Psychological Studies, Nova Southeastern University, November 7, 2002.

134. "The New A.P.A. Ethics Code", Continuing Education Seminar presented for Broward County Psychological Association. December 20, 2002.

135. "Can Psychologists Save A Man From Death Row", Grand Rounds, Nova Southeastern University, February 17, 2003.

136. "Forensic Psychology: What It Is and What It Is Not", Seminar presented for Farquhar School of Undergraduate Studies, Nova Southeastern University, Summer Program, "Biotechnology: Friend or Foe", June 26, 2003.

137. "Competency. Criminal Responsibility and Capital Sentencing: International Perspective", Seminar presented at Inter-American Psychology Conference, Lima, Peru, July 14, 2003.

138. Dorsainville A, Harder N, Ikpe V, Shapiro D: The Use of Mental Health as a Mitigating Factor in Capital Sentencing Proceedings. Poster presented at Annual Meeting of Florida Psychological Association, July 10. 2004.

139. Shapiro D: Andrea Yates on Trial: Could Psychology Have Made a Difference. Presentation at A.P.A. Annual Meeting, Honolulu, Hawaii, July 30. 2004.

140. Shapiro D: Diagnosis and Treatment of Sexually-Offending Therapists. In-Service Training presented to Louisiana Board of Physical Therapy, New Orleans, Louisiana, August 28, 2004.

141. Shapiro D: Diagnosis and Treatment of Sexually-Offending Therapists. Paper presented to Federation of State Boards of Physical Therapy, Philadelphia, Pennsylvania, September 12, 2004.

142. Shapiro D: The Scope of Forensic Psychology. Seminar presented to Florida Atlantic University, Psy Chi Chapter, Boca Raton Campus, October 11, 2004.